IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

RUBEN ARROYO,                )
                             )
    Petitioner,              )
                             )
v.                           )    No. 08-cv-280-JPG
                             )
UNITED STATES OF AMERICA,    )
                             )
    Respondent.              )

**MEMORANDUM AND ORDER**

This matter comes before the Court on petitioner Ruben Arroyo's motion to vacate, set aside or correct his sentence pursuant to 28 U.S.C. § 2255 (Doc. 1)[1] and its supplement (Doc. 2). The government has responded to the motion (Doc. 10), and Arroyo has replied to the government's response (Doc. 13).

**I.    Background**

In April 2005, Arroyo was first indicted in this case. In May 2005, the grand jury returned a superseding indictment charging Arroyo with six counts: one count of conspiring to distribute 50 grams or more of crack cocaine, 5 kilograms or more of powder cocaine and 500 grams or more of methamphetamine in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A) & 846 (Count 1) and five counts of distributing either less than 500 grams of powder cocaine, 50 grams or more of crack cocaine or 50 grams or more of methamphetamine in violation of 21 U.S.C. §§ 841(a)(1) & (b)(1)(A), (B) or (C) (Counts 2-6). On February 2, 2006, Arroyo pled guilty to those charges without a plea agreement. The Court accepted his plea after its standard colloquy pursuant to Federal Rule of Criminal Procedure 11 in which it ensured Arroyo understood the

---

[1] In his § 2255 motion, Arroyo includes a request for a reduction of sentence pursuant to 18 U.S.C. §3582(c)(2) based on recent amendments to the United States Sentencing Guidelines Manual regarding sentences involving crack cocaine. The Court has fully addressed this request in Arroyo's criminal proceeding, Case No. 05-cr-40028-JPG, and will not address it in this order.

possible penalties he was facing by pleading guilty and that by pleading guilty he was giving up his rights to a jury trial, to confront his accusers at trial and to bring witnesses in to testify on his own behalf at trial. In the colloquy, Arroyo assured the Court he understood he was waiving those rights, was pleading guilty as his own free and voluntary act and had not been promised anything or threatened by anything to induce him to plead guilty. Arroyo also admitted drug activity to support each count and that he possessed a firearm during the course of the charged conspiracy. When asked by the Court, the government estimated Arroyo's sentencing range under the guidelines would be at least 360 months to life and possibly mandatory life. The Court confirmed that, knowing he could be facing life in prison, Arroyo still wished to plead guilty.

On June 1 and 22, 2006, the Court held a sentencing hearing at which it considered Arroyo's objections to the presentence investigation report's ("PSR") findings as to his relevant conduct, his possession of a weapon during the conspiracy and his use of a minor in the offense, among other things. The Court heard evidence on those matters from government witnesses; Arroyo called no witnesses. The Court found by a preponderance of the evidence that Arroyo's relevant conduct, comprised of multiple drugs, was at least 30,000 kilograms of marihuana equivalency units ("MEUs"), which under United States Sentencing Guidelines Manual ("U.S.S.G.") § 2D1.1[2] yielded a base offense level of 38.

His offense level was increased by 2 points under U.S.S.G. § 2D1.1(b)(1) for possession of a dangerous weapon based on the testimony of two witnesses regarding two guns discovered by law enforcement officers during a search of Arroyo's residence and on Arroyo's admissions during his plea colloquy. The Court also increased his offense level by 3 points under U.S.S.G.

---

[2] Unless otherwise noted, the references to the guidelines in this order are to the 2005 United States Sentencing Guidelines Manual.

§ 3B1.1(b) for being a manager or supervisor and by 2 points under U.S.S.G. § 3B1.4 for using a minor to commit the offense.  Arroyo's offense level was decreased by 3 points under U.S.S.G. § 3E1.1 for acceptance of responsibility, yielding a total offense level of 42.  Arroyo's PSR found Arroyo was only entitled to a 2-point reduction for acceptance of responsibility, but at sentencing Arroyo's counsel made a compelling argument that convinced the government to move for the additional 1-point reduction in light of the level of Arroyo's cooperation and of sentences given to other similar offenders.

When determining Arroyo's criminal history, the significance of two convictions for driving an uninsured vehicle was disputed.  The Court rejected Arroyo's counsel's argument that the convictions should not be considered in calculating Arroyo's criminal history and found his criminal history to be in category III**.**  Considering Arroyo's criminal history category of III, this yielded a sentencing range of 360 months to life on Counts 1 and 4, 240 months on Counts 2, 3 and 5, and 360 to 480 months on Count 6.  The Court imposed a sentence of 420 months on Counts 1, 4 and 6, and 240 months on Counts 2, 3 and 5, no more than the statutory maximum sentences established by Arroyo's convictions.  *See* 21 U.S.C. § 841(b)(1).

Arroyo appealed to the Seventh Circuit Court of Appeals, where his counsel filed an *Anders* brief seeking to be allowed to withdraw from the case.  *See Anders v. California*, 386 U.S. 738 (1967).  The Court of Appeals granted counsel's motion to withdraw and dismissed Arroyo's appeal on March 12, 2007.  *United States v. Arroyo*, No. 06-2850, 2007 WL 737353 (7th Cir. Mar. 12, 2007).  The Court of Appeals issued the mandate on April 3, 2007.  Arroyo did not petition the United States Supreme Court for a writ of *certiorari*.

On April 14, 2008, Arroyo filed a timely § 2255 motion enumerating various grounds for

relief.³  The Court has attempted to distill Arroyo's 116-page filing and its 16-page supplement to the core arguments, which are as follows:

1. Arroyo was deprived of his Sixth Amendment right to effective assistance of counsel when:
   a. his trial counsel failed to file a motion to suppress the guns seized during the search of Arroyo's residence and the fruits of that search;
   b. his trial counsel failed to advise Arroyo of all the facts and law relevant to his decision to plead guilty;
   c. his trial counsel failed at trial and sentencing to investigate and present evidence in Arroyo's favor and failed to object to the government's improper evidence;
   d. his trial counsel failed to move for a downward departure;
   e. his appellate counsel failed to present the strongest issues on appeal and failed to argue on appeal:
      i. that the Court did not properly weigh the sentencing factors in 18 U.S.C. § 3553(a); and
      ii. that the Court improperly based the sentence on facts neither found by a jury nor admitted by Arroyo;
   f. his appellate counsel failed to file a petition for a writ of *certiorari* in anticipation of the holding in *Gall v. United States*, 552 U.S. 38, 47 (2007);
   g. his trial and appellate counsel represented Arroyo while having an actual conflict of interest; and
   h. his trial and appellate counsel's cumulative error is considered.

2. Arroyo's conviction and sentence violated:
   a. his First Amendment right to free speech and to petition the government;
   b. his Fourth Amendment right to be free of unreasonable search and seizure;
   c. his Fifth Amendment right to due process of law;
   d. his Sixth Amendment rights to effective assistance of counsel (as set forth above), to a jury trial, to confront his accusers, to present a defense, to compulsory process; and
   e. his Eighth Amendment right to be free of cruel and unusual punishment.

Arroyo also asks for discovery and for a hearing on his § 2255 motion and for appointment of counsel.

The government contends Arroyo's allegations are unsupported by any factual allegation and/or are meritless.

---

³Arroyo also presented an additional argument that his sentence should be reduced under 18 U.S.C. § 3582(c)(2). As noted earlier, that argument has been addressed separately in Arroyo's criminal case.

**II.     § 2255 Standards**

The Court must grant a § 2255 motion when a defendant's "sentence was imposed in violation of the Constitution or laws of the United States." 28 U.S.C. § 2255. However, "[h]abeas corpus relief under 28 U.S.C. § 2255 is reserved for extraordinary situations." *Prewitt v. United States*, 83 F.3d 812, 816 (7th Cir. 1996). "Relief under § 2255 is available only for errors of constitutional or jurisdictional magnitude, or where the error represents a fundamental defect which inherently results in a complete miscarriage of justice." *Kelly v. United States*, 29 F.3d 1107, 1112 (7th Cir. 1994) (quotations omitted). It is proper to deny a § 2255 motion without an evidentiary hearing if "the motion and the files and records of the case conclusively demonstrate that the prisoner is entitled to no relief." 28 U.S.C. § 2255.

A § 2255 motion does not substitute for a direct appeal. A defendant cannot raise in a § 2255 motion constitutional issues that he could have but did not raise in a direct appeal unless he shows good cause for and actual prejudice from his failure to raise them on appeal or unless failure to consider the claim would result in a fundamental miscarriage of justice. *Massaro v. United States*, 538 U.S. 500, 504 (2003); *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977); *Fountain v. United States*, 211 F.3d 429, 433 (7th Cir. 2000); *Prewitt*, 83 F.3d at 816.

The failure to hear a claim for ineffective assistance of counsel in a § 2255 motion is generally considered to work a fundamental miscarriage of justice because often such claims can be heard in no other forum. They are rarely appropriate for direct review since they often turn on events not contained in the record of a criminal proceeding. *Massaro*, 538 U.S. at 504-05; *Fountain*, 211 F.3d 433-34. In addition, the district court before which the original criminal proceedings occurred, not an appellate court, is in the best position to initially make the determination about the effectiveness of counsel in a particular proceeding and potential

prejudice that stemmed from that performance. *Massaro*, 538 U.S. at 504-05. For these reasons, ineffective assistance of counsel claims, regardless of their substance, may be raised for the first time in a § 2255 petition.

**III.     Analysis**

      A.     <u>Ineffective Assistance of Counsel</u>

The vast majority of Arroyo's claims assert that his trial and appellate attorneys were constitutionally ineffective and that he was therefore deprived of the assistance of counsel guaranteed by the Sixth Amendment. The Sixth Amendment to the Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." U.S. Const. amend. VI. This right to assistance of counsel encompasses the right to *effective* assistance of counsel. *McMann v. Richardson*, 397 U.S. 759, 771, n. 14 (1970). A party claiming ineffective assistance of counsel bears the burden of showing (1) that his trial counsel's performance fell below objective standards for reasonably effective representation and (2) that this deficiency prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 688-94 (1984); *Wyatt v. United States*, 574 F.3d 455, 457-58 (7th Cir. 2009); *Fountain v. United States*, 211 F.3d 429, 434 (7th Cir. 2000).

To satisfy the first prong of the *Strickland* test, the plaintiff must direct the Court to specific acts or omissions of his counsel. *Wyatt*, 574 F.3d at 458. The Court must then consider whether in light of all of the circumstances counsel's performance was outside the range of professionally competent assistance. *Id.* The Court's review of counsel's performance must be "highly deferential[,] . . . indulg[ing] a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689; *accord Wyatt*, 574 F.3d at 458. Counsel's performance must be evaluated keeping in mind that an attorney's

6

trial strategies are a matter of professional judgment and often turn on facts not contained in the trial record. *Strickland*, 466 U.S. at 689. The Court cannot become a "Monday morning quarterback." *Harris v. Reed*, 894 F.2d 871, 877 (7th Cir. 1990).

To satisfy the second prong of the *Strickland* test, the plaintiff must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different. *Fountain*, 211 F.3d at 434; *Adams v. Bertrand*, 453 F.3d 428, 435 (7th Cir. 2006). "A reasonable probability is defined as one that is sufficient to undermine confidence in an outcome." *Adams*, 453 F.3d at 435 (citing *Strickland*, 466 U.S. at 694).

The Court will address each of the alleged deficiencies of counsel and then will address the cumulative effect of any error.

   1.   Failure to File Motion to Suppress

Arroyo believes his trial counsel was deficient because he did not file a motion to suppress evidence – namely, the two guns that served as the basis for his 2-point weapon enhancement and ammunition – seized during the search of Arroyo's residence. He believes counsel should have filed a motion because Arroyo had surveillance video that shows law enforcement entering the residence to execute a search warrant without knocking first. He believes suppression of this evidence would have led to dismissal of the indictment, a more favorable plea deal or the omission of the 2-point enhancement for possession of the guns.

Counsel was not deficient for failing to raise this issue because it was a losing argument. Defense counsel is not deficient for failing to make a frivolous or losing argument. *Fuller v. United States*, 398 F.3d 644, 652 (7th Cir. 2005); *Whitehead v. Cowan*, 263 F.3d 708, 731 (7th Cir. 2001); *United States v. Nolan*, 910 F.2d 1553, 1564 (7th Cir. 1990). It is true that the Fourth Amendment reasonableness requirement, with some exceptions, generally requires law

7

enforcement officers to announce their presence when they arrive at a residence to execute a warrant and to provide the residents a reasonable opportunity to open the door on their own. *Wilson v. Arkansas*, 514 U.S. 927, 934-36 (1995) (reasonableness is a flexible inquiry; exceptions where there is a threat of physical violence or destruction of evidence if advance notice given); *Richards v. Wisconsin*, 520 U.S. 385, 394 (1997) (exception where law enforcement has reasonable suspicion knocking and announcing would be dangerous or futile or might result in destruction of evidence). However, violation of that rule does not require exclusion of the evidence found in that search so long as the search warrant is valid. *Hudson v. Michigan*, 547 U.S. 586, 594 (2006). In *Hudson*, the Supreme Court declined to apply the exclusionary rule to knock-and-announce violations because the interests served by the knock-and-announce rule – the protection of human life and limb, property, privacy and dignity – are not those protected by the exclusionary rule – shielding potential evidence from the government. *Id.* at 593-94.

   Arroyo does not challenge the validity of the warrant to search his residence, and under *Hudson* a knock-and-announce violation by itself would not justify suppression. Therefore, even if everything Arroyo says is true and law enforcement officers did not observe the knock-and-announce rule, any motion to suppress based on the violation would have been unsuccessful. Arroyo's counsel was not deficient for failing to make such an argument.

   Furthermore, Arroyo suffered no prejudice from the failure to have the weapons suppressed. The PSR demonstrates that the government had overwhelming evidence from other witnesses – more than just the two who testified at the sentencing hearing – that Arroyo possessed a gun in connection with his drug conspiracy offense. Even if the firearms themselves had been suppressed, there would have been more than enough evidence to warrant the 2-point

gun enhancement. There was also overwhelming evidence of Arroyo's participation in the charged drug activities such that suppression of the weapons could not have reasonably induced dismissal of the indictment or a more favorable plea deal.

In sum, Arroyo has failed to allege anything that would show a reasonable probability that, had his counsel filed a motion to suppress the fruits of the search of Arroyo's residence, the results of the proceedings would have been any different. Relief under § 2255 is not warranted based on trial counsel's failure to seek suppression of the evidence seized at Arroyo's residence.

### 2. Advice Before Guilty Plea

Arroyo believes his trial counsel was deficient because he did not properly advise him as to all the relevant facts and law before he pled guilty. He does not specify what advice counsel should have provided him that would have had a reasonable probability of changing the result of the proceedings.

In a case where a petitioner pled guilty as a result of alleged ineffective assistance of counsel, to satisfy the first prong of the *Strickland* test, the petitioner must show that his counsel's advice leading to the plea was outside the range of professionally competent assistance. *Hill v. Lockhart*, 474 U.S. 52, 56-57 (1985) (citing *McMann v. Richardson*, 397 U.S. 759, 771 (1970); *Tollett v. Henderson*, 411 U.S. 258, 267 (1973)). To satisfy the second *Strickland* prong, he must show that there is a reasonable probability that, but for his counsel's deficient performance, he would not have entered a guilty plea and instead would have gone to trial. *Hill*, 474 U.S. at 58; *Wyatt v. United States*, 574 F.3d 455, 458 (7th Cir. 2009); *Richardson v. United States*, 379 F.3d 485, 487 (7th Cir. 2004). Counsel's deficient performance must have been a decisive factor in the defendant's decision to enter a guilty plea. *Wyatt*, 574 F.3d at 458; *see Julian v. Bartley*, 495 F.3d 487, 498 (7th Cir. 2007). To make such

a showing, the petitioner must present objective evidence that he would not have entered a guilty plea; his own self-serving testimony is not enough. *McCleese v. United States*, 75 F.3d 1174, 1179 (7th Cir. 1996) (citing *Toro v. Fairman*, 940 F.2d 1065, 1068 (7th Cir. 1991)); *see Wyatt*, 574 F.3d at 458 (stating "a defendant's mere allegation that he would have chosen a path other than the conditional plea is insufficient by itself to establish prejudice.").

As for the first prong of the *Strickland* test, Arroyo has utterly failed to identify any specific omission or error in the advice his counsel gave him before he pled guilty. Without identifying counsel's alleged deficiency, the Court cannot say his performance was unconstitutional. *See Galbraith v. United States*, 313 F.3d 1001, 1008-09 (7th Cir. 2002) (requiring evidence of counsel's deficiency). "An ineffective assistance of counsel claim cannot stand on a blank record, peppered with the defendant's own unsupported allegations of misconduct." *United States v. Hodges*, 259 F.3d 655, 660 (7th Cir. 2001).

As for the prejudice prong of the *Strickland* test, Arroyo has not pointed to any objective evidence that, had counsel advised him differently, there is a reasonable probability he would not have pled guilty and would have gone to trial. In the absence of an indication that such evidence exists and that counsel's failure to advise him properly was a decisive factor in his decision to plead guilty, the Court cannot find Arroyo was prejudiced by his counsel's pre-plea advice.

Furthermore, the plea colloquy demonstrates Arroyo fully understood the charges against him, the possible penalties for a conviction, the rights to which he was entitled and the consequences of his plea. He also admitted a factual basis to support the charges against him. Arroyo's statements at the plea hearing also evidence that he pled guilty freely and voluntarily, not in response to any coercion or promise. As a consequence, the Court found Arroyo's plea to be competent, knowing and voluntary, and nothing Arroyo alleges now indicates any differently.

10

He has simply alleged no prejudice from counsel's pre-plea advice.

For these reasons, § 2255 relief is unavailable because of counsel's pre-plea advice.

       3.      <u>Failure to Investigate and Present Evidence and to Object to the Government's Evidence</u>

Arroyo believes his counsel was also deficient because he failed to investigate his case and present evidence in Arroyo's favor and failed to object to the government's evidence against him.

An attorney has "a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Strickland v. Washington*, 466 U.S. 668, 691 (1984); *accord Wiggins v. Smith*, 539 U.S. 510, 521 (2003); *Adams v. Bertrand*, 453 F.3d 428, 436 (7th Cir. 2006). When a petitioner accuses his counsel of failing to investigate his case, in order to establish prejudice he must "provide the court sufficiently precise information, that is, a comprehensive showing as to what the investigation would have produced." *Richardson v. United States*, 379 F.3d 485, 488 (7th Cir. 2004) (internal quotations omitted); *Hardamon v. United States*, 319 F.3d 943, 951 (7th Cir. 2003) (internal quotations and citation omitted). The information counsel failed to uncover must be sufficient to cause counsel to change his recommendation as to the guilty plea. *Richardson*, 379 F.3d at 488. The petitioner cannot rely on vague allegations that the investigation was insufficient or would have yielded favorable evidence. *See Hardamon*, 319 F.3d at 951. Without sufficiently precise information, the petitioner cannot show that constitutionally adequate counsel would have performed any differently than his actual counsel did. *See Richardson*, 379 F.3d at 488. Here Arroyo has not alleged what additional information counsel would have discovered on further investigation that would have had a reasonable probability of changing counsel's recommendation to plead guilty.

Similarly, when a § 2255 petitioner faults his attorney for failing to object and present

evidence at trial or at sentencing, he bears the burden of demonstrating what evidence or argument the attorney should have presented and that the presentation of such evidence or argument had a reasonable probability of changing the result.  *Fuller v. United States*, 398 F.3d 644, 652 (7th Cir. 2005);  *Berkey v. United States*, 318 F.3d 768, 774 (7th Cir. 2003).  Arroyo has alleged nothing that his counsel could have presented or argued that would have had a reasonable probability of changing the result of the proceedings.

Because Arroyo has not pointed to any prejudice from his counsel's allegedly inadequate investigation, presentation of evidence or argument, he is not entitled to § 2255 relief on this ground.

### 4.   Failure to Move for Downward Departure

Arroyo faults his counsel for failing to move for a downward departure at sentencing.  Again, counsel was not deficient for failing to make such a request, and Arroyo suffered no prejudice from that failure.

At sentencing, Arroyo was facing life in prison.  The PSR found that, based on the drug amounts involved in Arroyo's crimes, his guideline range for Counts 1 and 4 was mandatory life.  Arroyo's counsel made a valiant and compelling argument that Arroyo should not receive two enhancements recommended by the PSR and that he should not be sentenced to life in prison in light of his cooperation with the government and with sentences being served by similar offenders.  The argument was successful in persuading the government to move for an additional 1-point offense level reduction under U.S.S.G. § 3E1.1 for acceptance of responsibility, although it did not persuade the Court not to apply the two enhancements.  As a consequence, the Court was able to impose the sentence it thought appropriate – a mid-range 420 months – without going outside the guidelines.

A motion for a downward departure would have been futile where the sentence actually imposed was not even at the bottom of the sentencing range. If the Court had wanted to go lower, it could have done so within the sentencing range. It also could have gone below the guideline range in light of *United States v. Booker*, 543 U.S. 220 (2005), which rendered the sentencing guidelines advisory rather than mandatory and downward departures obsolete. *United States v. Vaughn*, 433 F.3d 917, 923-24 (7th Cir. 2006). It did not go below the guideline range, and Arroyo has suggested no reason a motion for a downward departure would have had any chance of changing the result of his sentencing. Furthermore, counsel made a compelling and successful argument for a sentence lower than that recommended by the PSR. A request for an additional reduction could have been seen as overreaching, would have risked detracting from the reasonable argument counsel advanced and might have caused the government to refrain from asking for the additional 1-point reduction. The decision to refrain from requesting a downward departure was well within the performance range of reasonably competent counsel.

For these reasons, the Court will not award relief under § 2255 because counsel failed to ask for a downward departure.

5.  Failure to Present the Strongest Appeal Issues

Arroyo believes his appellate counsel was constitutionally deficient because he failed to present the strongest issues on appeal.

Appellate counsel is not deficient for failing to "raise every non-frivolous issue under the sun." *Mason v. Hanks,* 97 F.3d 887, 893 (7th Cir. 1996). Counsel is only deficient if he "fails to appeal an issue that is both obvious and clearly stronger than one that was raised." *Winters v. Miller*, 274 F.3d 1161, 1167 (7th Cir. 2001); *accord Suggs v. United States*, 513 F.3d 675, 678 (7th Cir. 2008). Furthermore, a petitioner can show prejudice from this deficiency only by

13

demonstrating "that there is a reasonable probability that, but for the deficient performance of his attorney, the result of the appeal would have been different." *Suggs*, 513 F.3d at 678.

Arroyo has not suggested what obvious, viable argument his counsel should have but failed to raise on appeal. Arroyo's counsel believed, and the Court of Appeals agreed, that there were no viable issues for appeal. *See United States v. Arroyo*, No. 06-2850, 2007 WL 737353 (7th Cir. Mar. 12, 2007). Where Arroyo cannot point to any obvious, viable argument counsel should have made, he cannot show counsel was deficient or that he was prejudiced by the failure to raise that argument.

### a.     Weighing of Sentencing Factors

To the extent Arroyo's motion may be construed to assert appellate counsel should have argued the Court did not properly weigh the sentencing factors in 18 U.S.C. § 3553(a), that argument has no merit. After *United States v. Booker*, 543 U.S. 220 (2005), judges have discretion to sentence defendants within the applicable statutory sentencing range so long as they consider the guideline range and the sentence is reasonable. *United States v. Vaughn*, 433 F.3d 917, 923-24 (7th Cir. 2006); *see United States v. Cunningham*, 429 F.3d 673, 675-76 (7th Cir. 2005). In announcing the sentence, the Court indicated it had considered the appropriate sentencing factors, and Arroyo has not alleged or argued anything that, if true, would establish an abuse of the Court's discretion in weighing the factors as it did. If Arroyo cannot articulate what counsel should have argued to show the Court weighed the § 3553(a) factors improperly, he cannot show deficient performance or prejudice from failing to make the argument on appeal.

### b.     Judicial Factfinding at Sentencing

To the extent Arroyo's motion may be construed to assert appellate counsel should have objected to the Court's finding by a preponderance of the evidence facts that raised Arroyo's

offense level, that argument has no merit. Since *United States v. Booker*, 543 U.S. 220 (2005), which was decided prior to Arroyo's sentencing, it has been clear that the Court can find facts at sentencing by a preponderance of the evidence that raise a defendant's offense level so long as the facts do not result in a sentence above the statutory maximum sentence established by the facts admitted by the defendant. In *Booker*, the Supreme Court held that "judges may not find facts that increase the maximum punishment and that a mandatory sentencing guidelines scheme violates that rule." *United States v. Robinson*, 435 F.3d 699, 701 (7th Cir. 2006). *Booker* then rendered the sentencing guidelines advisory to avoid this problem. *Id.* at 701-02. As a consequence, so long as the sentence is within the statutory sentencing range, courts are now clearly permitted "to grant a sentencing enhancement based on facts not charged in the indictment, not proven to a jury beyond a reasonable doubt or not admitted by the defendant." *United States v. Owens*, 441 F.3d 486, 490 (7th Cir. 2006) (citing *Booker*, 543 U.S. at 226-27).

Here, none of the facts found by the Court by a preponderance of the evidence resulted in a sentence beyond the statutory maximum sentence for each count based on the facts admitted by Arroyo at his plea hearing. There was no problem with the Court's factfinding at sentencing. Arroyo's counsel was not deficient for failing to make such a frivolous argument. *See Fuller v. United States*, 398 F.3d 644, 652 (7th Cir. 2005); *Whitehead v. Cowan*, 263 F.3d 708, 731 (7th Cir. 2001); *United States v. Nolan*, 910 F.2d 1553, 1564 (7th Cir. 1990).

      6.     Failure to File Petition for Writ of *Certiorari*

Arroyo claims his appellate counsel was deficient because he failed to file a petition for a writ of *certiorari* from the Supreme Court after the Court of Appeals dismissed his case. He believes counsel should have filed the petition in light of the Supreme Court's decision on November 3, 2006, to grant a petition for a writ of *certiorari* in *Claiborne v. United States*, 549

U.S. 1016 (2006). *Claiborne* presented issues concerning a district court's discretion to issue a below-guidelines sentence. When *Claiborne* became moot because of the petitioner's death, the Court granted on June 11, 2007, a petition for a writ of *certiorari* in *Gall v. United States*, 551 U.S. 1113 (2007), which presented similar issues. The Supreme Court eventually held in *Gall* that a district court has broad discretion to issue reasonable sentences outside the applicable guideline range and that "extraordinary circumstances" are not required to justify a below-guidelines sentence. *Gall v. United States*, 552 U.S. 38, 47 (2007). Arroyo believes that had counsel investigated the procedural status of *Claiborne* and filed a petition for a writ of *certiorari* on the basis that the Court failed to give proper weight to the sentencing factors in 18 U.S.C. § 3553(a), his case would have remained alive until after *Gall* was decided. He further believes *Gall* would have had a reasonable probability of causing a different result in his case because he thinks the Court mistakenly believed it could not impose a below-guidelines sentence without "extraordinary circumstances."

The Court need not tarry long over this argument. The Sixth Amendment right to counsel does not extend to the pursuit of a petition to the Supreme Court for a writ of *certiorari*. *Ross v. Moffitt*, 417 U.S. 600, 617 (1974); *Wyatt v. United States*, 574 F.3d 455, 459 (7th Cir. 2009). There can be no constitutionally ineffective assistance of counsel where there is no constitutional right to counsel. *Wyatt*, 574 F.3d at 459 (citing *Coleman v. Thompson*, 501 U.S. 722, 752 (1991)). Arroyo is not entitled to § 2255 relief on this ground.

       7.    <u>Counsel's Conflict of Interest</u>

Arroyo argues his trial and appellate counsel violated his Sixth Amendment right to counsel because they were operating with an actual conflict of interest. He does not specify the nature of the alleged conflict.

When the alleged ineffective assistance of counsel stems from conflicts of interest, the *Strickland* standard is slightly different.  Where a petitioner shows his counsel's conflict of interest actually affected the adequacy of his representation, prejudice from that conflict is presumed.  *Cuyler v. Sullivan,* 446 U.S. 335, 349-50 (1980);  *Strickland v. Washington*, 466 U.S. 668, 692 (1984).  "But until a defendant shows that his counsel actively represented conflicting interests, he has not established the constitutional predicate for his claim of ineffective assistance."  *Cuyler,* 446 U.S. at 350.

Arroyo has utterly failed to allege anything amounting to an actual conflict of interest that would give rise to a Sixth Amendment violation.  Therefore, the Court cannot order relief under § 2255 on this basis.

        8.       <u>Cumulative Counsel Error</u>

The Court finds that Arroyo had not demonstrated a reasonable probability that, but for the foregoing alleged errors by counsel, even if considered in combination, the result of the proceedings would have been different.

For the foregoing reasons, the Court rejects completely Arroyo's claim that he received constitutionally ineffective assistance of counsel at any stage of the proceedings.

    B.    <u>Other Alleged Violations</u>

        1.       <u>Sixth Amendment</u>

Arroyo asserts his Sixth Amendment right to a jury trial, to confront his accusers, to present a defense and to compulsory process were violated by his conviction.  The record, however, is clear that Arroyo knowingly, voluntarily and competently waived those rights at his plea hearing.  He has alleged nothing in his § 2255 motion showing otherwise.

        2.        <u>First, Fourth, Fifth and Eighth Amendments</u>

Arroyo's references to violations of his First Amendment free speech and petition rights, his Fourth Amendment right to be free from unreasonable search and seizure, his Fifth Amendment right to due process and his Eighth Amendment right to be free from cruel and unusual punishment are too vague to warrant lengthy consideration. Suffice it to say he has alleged nothing that, if true, would constitute a violation of those rights.

**IV.**    **Conclusion**

For the foregoing reasons, the Court **DENIES** Arroyo's § 2255 motion (Doc. 1) and its supplement (Doc. 2) and **DIRECTS** the Clerk of Court to enter judgment accordingly.

**IT IS SO ORDERED**
**DATES:  January 20, 2010**

                                            <u>s/ J. Phil Gilbert</u>
                                            **J. Phil Gilbert, District Judge**